DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@holdenlegal.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@holdenlegal.com
HOLDEN, KIDWELL, HAHN & CRAPO, P.L.L.C.
P.O. Box 50130
1000 Riverwalk Drive, Suite 200
Idaho Falls, ID 83405
Telephone: (208) 523-0620
Facsimile: (208) 523-9518

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALFONSO LONGORIA,<br><br>    Plaintiff,<br><br>v.<br><br>SEARS, ROEBUCK AND CO.,<br><br>    Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff, Alfonso Longoria, by and through his counsel of record Holden, Kidwell, Hahn & Crapo, P.L.L.C. and as a cause of action against Defendant Sears, Roebuck and Co. alleges and complains as follows:

**JURISDICTION AND VENUE**

1. This is an action brought under the Americans with Disabilities Act Amendments Act ("ADAAA"), 42 U.S.C. § 12101, *et seq.* and the common and statutory law of the state of Idaho.

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 1367; and 42 U.S.C. § 12117.

3.   Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose, in this judicial district; and venue also properly lies in this district pursuant to 42 U.S.C. § 12117 because the unlawful employment practices were committed in this judicial district.

## PARTIES

4.   Plaintiff Alfonso Longoria  ("Longoria") is a male citizen and a resident of the United States of America, who resides in Idaho Falls, Idaho.

5.   Defendant Sears, Roebuck and Co. ("Sears") is a New York corporation, with its principal place of business located in Hoffman Estates, Illinois, and which does business in the state of Idaho.

6.   At all times material to this Complaint, Sears regularly employed fifteen or more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of 42 U.S.C. § 2000e, *et seq*. and 42 U.S.C. § 12111.

## FACTS COMMON TO ALL COUNTS

7.   Longoria realleges and incorporates by reference paragraphs 1 through 6 above, as though fully incorporated herein.

8.   Longoria began working for Sears on or about November 11, 1982, as a service technician and worked there over 30 years.

9.   At all times he was employed by Sears, Longoria performed his job duties in a satisfactory manner.

10.   On or about September 12, 2014, Longoria had a minor accident in his van when he contacted the bumper of the car in front of him, causing a very small amount of damage. No citations were issued.

11. In early Spring 2015, Longoria was assigned a new supervisor, Ted Proctor ("Proctor") after the prior supervisor died unexpectedly. Both he and his fellow technicians expressed concerns to Proctor's supervisor, James Shelton ("Shelton"), regarding Proctor's appointment as lead because of past problems with him. Shelton expressed that Proctor had made changes and would do better.

12. In the spring of 2015, Longoria verbally requested from Proctor that he be allowed to have a carpal tunnel evaluation through worker's compensation because of gripping problems, numbness, and pain he was experiencing in his hands, particularly his dominant hand. Proctor told him they were too busy at that time for Longoria to pursue treatment and to hold off. Proctor made no report of Longoria's problem or concerns.

13. Although Longoria was concerned about his gripping problems and pain, he attempted to delay any treatment based on Proctor's direction. Further, because Proctor was volatile, Longoria did not want to provoke him.

14. On July 6, 2015, Longoria was involved in a very minor incident where he barely tapped the bumper of a car that pulled in closely behind him while Longoria was parking the service van. There was no damage at all. Although the incident was trivial at best, Proctor gave Longoria a disciplinary write-up, which was contrary to Sears' past practice.

15. Several months after reporting to Proctor the problem he was experiencing with his hands, Longoria reported to Proctor that he had fallen out of his van. He explained that he lost his balance and went to catch himself, but could not grip the handle strong enough to hold himself because of the problems he was having with his hands. Proctor was clearly irritated. He spoke to Longoria a few days later and said that because Longoria was okay, there was no need for him to document the workplace incident.

16.     In January 2016, Proctor issued a final warning for Longoria because an alleged driver alert called in nearly a month before which Longoria knew nothing about it until he was disciplined.  Because of the delay in being notified about the call, Longoria could not recall any specific incident.  He had never before been disciplined for a call from another driver and he does not know if Proctor ever talked to the driver. Further, Sears had not previously disciplined employees for driver alert calls.

17.     In March 2016, Longoria again asked Proctor to initiate a worker's compensation evaluation for the weakness, numbness, and pain he was experiencing in his hands.  Proctor told Longoria he could guarantee it would just be denied.

18.     Because the problems with his hands continued to get worse, Longoria contacted a Sears HR representative who directed him to go ahead and be evaluated by a doctor and let her know what the diagnosis was.

19.     On or about March 31, 2016, Longoria requested that Proctor allow him a helper on a job due to the problems he was having with his gripping strength.  Proctor was upset and had a verbal altercation with Longoria over the request.  Longoria was denied the request for a helper.

20.     After the verbal altercation, Longoria reported to Shelton the problems with Proctor.  He and Shelton discussed the problems for some time and Shelton asked that Longoria also submit his complaint by e-mail. Later that evening a helper called Longoria and met Longoria at the job site.

21.     On or about April 4, 2016, Longoria was diagnosed with carpal tunnel associated with his work on a "more probable than not basis," which Longoria had sent to Sears.  Dr. Andary indicated that they would pursue this as a worker's compensation injury and indicated additional testing needed to be scheduled.

22.     On or about April 7, 2016, Longoria sent a letter by email to Shelton as previously requested, detailing his concerns about Proctor, including the hostile work environment Proctor was creating and his concerns for retaliation, and providing some examples. Longoria reported Proctor's interference with him getting help for the problems with his hands and that he felt Proctor was constantly trying to find a way to get rid of him.

23.     Shortly thereafter, Proctor apologized to Longoria for his behavior regarding Longoria's request for a helper, but Longoria could tell he was angry.

24.     In late April 2016, Longoria called HR to verify that his diagnosis from Dr. Andary had been received because he had heard nothing from Sears about filing a worker's compensation claim. Longoria was anxious to get the medical help he needed because of the increasing symptoms with his hands.

25.     Finally, in mid May 2016, Proctor informed Longoria that a worker's compensation form needed to be filled out and the two of them did it over the telephone with Sears' worker's compensation carrier. Longoria indicated in the worker's compensation form that he was "losing strength in grip – both hands." Proctor was annoyed with the entire process.

26.     Although a worker's compensation claim was submitted, no alterations or accommodations were made or discussed to assist Longoria in completing his work in spite of his repeated complaints about the problems with his hands.

27.     On or about May 23, 2016, Longoria was driving his van when a dog suddenly ran out in front of him. Longoria swerved to miss it and his two right tires went into the soft, sloped shoulder of the road. Longoria lost control of the vehicle and it rolled.

28. Longoria suffered injuries from the rollover, including a head injury and stitches. Longoria was not cited as a result of the accident due to the uncontrolled dog running out in front of him very suddenly.

29. Longoria felt that his poor gripping strength may have contributed to his inability to steer the van back onto the road.

30. Sears uses Collision Preventability Guidelines to determine whether an employee should be disciplined as a result of a motor vehicle accident. It defines a "preventable accident" as follows: "Any accident involving a Company vehicle while being used on company business that results in property damage and/or personal injury, and in which the driver failed to exercise every reasonable precaution to prevent the accident."

31. Longoria felt he had used every reasonable precaution to prevent the accident, which was supported by the fact he was not cited. Further, Longoria felt that Sears' delay in helping him obtain treatment for his hands may have played a contributing factor in the accident as well.

32. On or about May 24, 2016, Proctor reminded Longoria that he had a doctor's appointment the next day for his diagnosed carpal tunnel syndrome.

33. On the same day, Longoria was asked to turn in all Sears equipment he had in his possession and placed on suspension.

34. On or about May 25, 2016, Longoria attended a medical appointment related to his carpal tunnel.

35. On or about June 1, 2016, Longoria's worker's compensation claim was put on hold while an investigation of the rollover occurred.

36. On or about June 20, 2016, Longoria was fired by Sears over the telephone.

37.  On or about September 6, 2016, and Longoria had one arm operated on to address his carpal tunnel syndrome which, was covered by worker's compensation. The other arm was operated on on or about September 13, 2016. This surgery was also covered by worker's compensation.

38.  On or about August 4, 2016, Longoria filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), which was dually filed with the Idaho Human Rights Commission.

39.  Longoria's Notice of Right to Sue was issued on or about November 20, 2017.   Longoria received in the mail the Notice of Right to Sue shortly thereafter. Longoria has exhausted his administrative remedies and timely filed this action.

## COUNT I
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT
### (Disability Discrimination)

40.  Longoria realleges and incorporates by reference paragraphs 1 through 39 above, as though fully incorporated herein.

41.  At all times relevant hereto, Longoria had a disability as defined by the ADAAA.

42.  Longoria had a physical impairment of bilateral carpal tunnel syndrome in both hands and a record of such impairment.

43.  Longoria's disability substantially limited his major life activities, including performing manual tasks, such as lifting and gripping, and sleeping due to pain and numbness.

44.  Longoria was a qualified individual under the ADAAA, i.e., an individual who, with or without reasonable accommodation, could perform the essential functions of the position he held.

45.   Sears took adverse employment actions against Longoria based upon his disability, including termination of Longoria's employment.  As a direct and proximate result of Sears's actions and/or failures to act, Longoria has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the discrimination he suffered. Further, Longoria has suffered a loss of earnings and other employment-based job opportunities. Longoria is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

46.   Sears's conduct was malicious and oppressive, and done with reckless disregard for Longoria's federally protected rights for which Longoria is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

**COUNT II**
**VIOLATION OF THE AMERICANS WITH**
**DISABILITIES ACT AMENDMENTS ACT**
**(Failure to Accommodate)**

47.   Plaintiff realleges and incorporates by reference their respective paragraphs 1 through 46 as though fully set forth herein.

48.   Longoria requested reasonable accommodations from Sears for his disability, including being allowed to pursue a worker's compensation claim and/or FMLA, requesting a helper, and to pursue the medical attention that he needed.

49.   Longoria reported to Sears that Proctor was hostile to allowing or making accommodations for the necessary treatment he needed.

50.   Sears could have provided a reasonable accommodation for Longoria's disability by documenting the work-related problems so he could obtain timely treatment of his carpal tunnel syndrome or granting him qualifying leave in order to enable Longoria to obtain treatment so he could complete his work without pain or difficulty.

51.    Sears failed to accommodate Longoria, and instead, took affirmative action to delay Longoria's treatment.

52.    Sears took adverse action against Longoria shortly after learning of his diagnosis, pursuit of a worker's compensation claim, and complaints about Proctor.

53.    As a direct and proximate result of Sears' actions and/or failures to act, Longoria has suffered, and will continue to suffer, a loss of earnings, employment benefits, and job-related opportunities.  Longoria is therefore entitled to general and compensatory damages, in an amount to be proven at trial, as well as any other equitable remedies available to him, including reinstatement.

### COUNT III
### VIOLATION OF THE AMERICANS WITH
### DISABILITIES ACT AMENDMENTS ACT
### (Retaliation)

54.    Longoria realleges and incorporates by reference paragraphs 1 through 53 above, as though fully incorporated herein.

55.    Longoria engaged in protected activity by reporting Proctor's abusive conduct and failure to address his work-related injuries and disability associated with his carpal tunnel syndrome, reporting his accident of falling out of the van due to his gripping problems, and reporting the injury to HR, and going over Proctor's head to report the problems with his hands.

56.    Sears subjected Longoria to adverse employment actions subsequent to Longoria engaging in protected activity, including terminating Longoria's employment.

57.    Such adverse actions constitute retaliation against Longoria for engaging in protected activity.

58.    As a direct and proximate result of Sears's actions and/or failures to act, Longoria has suffered and will continue to suffer emotional distress consisting of outrage, shock, and

humiliation, based upon the discrimination he suffered. Further, Longoria has suffered a loss of earnings and other employment based job opportunities. Longoria is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any equitable remedies available to him.

59.     Sears's conduct was malicious and oppressive, and done with reckless disregard for Longoria's federally protected rights for which Longoria is entitled to punitive damages pursuant to 42 U.S.C. § 1981a(a).

## COUNT IV
## WRONGFUL TERMINATION IN CONTRAVENTION
## OF PUBLIC POLICY

60.     Longoria realleges and incorporates by reference paragraphs 1 through 59 above, as though fully incorporated herein.

61.     Longoria engaged in protected activity when he reported work-related injuries and/or a disability and sought medical treatment for a work-related injury.

62.     Longoria also engaged in protected activity by raising concerns to Shelton regarding Proctor's refusal to acknowledge and pursue his reported workplace injury.

63.     Sears' termination of Longoria was motivated by Longoria's pursuit of his workplace injury, complaining about Proctor's failure to allow him to pursue a worker's compensation claim, and his assertions that the ongoing and untreated problems with his hands, particularly his gripping strength, may have contributed to his May 23, 2016, accident.

64.     Sears violated the public policy of the State of Idaho by its retaliatory actions.

65.     As a direct and proximate result of Sears's actions and/or failures to act, Longoria has suffered and will continue to suffer a loss of earnings and other employment based job

opportunities. Longoria is thereby entitled to damages, such amount to be proven at trial, as well as other equitable remedies available to him.

## ATTORNEY'S FEES

66.     As a further direct and proximate result of Sears's actions and/or failures to act, Longoria has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which should be required to be paid by Sears pursuant to Idaho Code §§ 12-120 and 12-121; 42 U.S.C. § 12205; and 42 U.S.C. § 2000e-5(k), *et seq.*

## DEMAND FOR JURY TRIAL

Longoria demands trial by jury as to all issues triable to a jury in this action.

## PRAYER FOR RELIEF

WHEREFORE, Longoria seeks judgment against Sears as follows:

1.      For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial, and any available equitable remedies;

2.      For punitive damages;

3.      For attorney's fees pursuant to statute and costs of suit; and

4.      For such other and further relief as the Court deems just and proper.

Dated this 16th day of February, 2018

        /s/
        DeAnne Casperson
        Holden, Kidwell, Hahn & Crapo, P.L.L.C.

G:\WPDATA\DC\19428 Longoria\Pleadings\Complaint.wpd:dg